IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10CV299

| | |
|---|---|
| PHILLIP BENHAM, as an individual and )<br>As a representative of OPERATION )<br>SAVE AMERICA, INC., and OPERATION )<br>SAVE AMERICA, INC., a non-profit )<br>Corporation, )<br>)<br>    Plaintiffs, )<br>)<br>Vs. )<br>)<br>CITY OF CHARLOTTE, a political )<br>Subdivision of the State of North Carolina, )<br>And EMILY CANTRELL, in her individual )<br>Capacity, )<br>)<br>    Defendants. )<br>_____) | ORDER |

This matter is before the Court upon the Defendants' Motion for Summary Judgment. This lawsuit arose out of Plaintiffs' March 17, 2010 application for a public assembly permit pursuant to City Code § 19-312, which was denied by the City of Charlotte. Plaintiffs claim that Defendants' application of the ordinance at issue violated their First Amendment rights and their rights to due process and equal protection. Plaintiffs also allege claims for violation of their right to religious liberty, freedom of speech and equal protection under the North Carolina constitution.

This is the second of two lawsuits filed by Plaintiffs related to Defendant City's public assembly ordinance. The first lawsuit, *Benham, et al. v. City of Charlotte, et al.*, 3:07-CV-395 (W.D.N.C.) ("*Benham I*"), was a facial and as applied challenge resulting from Defendants' treatment of a previous public assembly permit application by

1

Plaintiffs. In *Benham I*, the court rejected Plaintiffs' constitutional theories and entered summary judgment in favor of Defendants. Plaintiffs appealed that Order[1] and during the pendency of the appeal, filed the instant lawsuit ("*Benham II*") and sought a temporary restraining order/preliminary injunction. This Court denied the motion for TRO and preliminary injunction.[2] Defendants now seek summary judgment as to all of Plaintiffs' claims.

I.   BACKGROUND

The City of Charlotte regulates First Amendment activity on traditional public forums, as well as "festivals", through its Public Assembly and Picketing Ordinances, ordinances that are codified as Articles X and XI of Chapter 19 of the Charlotte City Code. City Code § 19-311 defines "public assembly" as:

> (1) a festival or demonstration which is reasonably anticipated to obstruct the normal flow of traffic upon any public street and that is collected together in one place; and
> (2) a festival on the Old City Hall lawn, the Charlotte-Mecklenburg Government Center plaza, or in Marshall Park, Polk Park, Independence Square Plaza, Arequipa Park or any other City-controlled Park.

A "festival" is defined as "a concert, fair, exhibit, promotion, community event, block party, or similar event." *Id.* A "demonstration" is "a public display of sentiment for or against a person or cause, including protesting." *Id.* An individual or group seeking to conduct a "public assembly" must apply for and obtain a permit. City Code § 19-312(a). The ordinance lists a number of reasons why a permit may be denied. City Code § 19-312(c).

---

[1] The Fourth Circuit vacated the decision on other grounds. Specifically, after ordering the parties, *sua sponte*, to brief and present oral arguments regarding Plaintiffs' standing in the case, the Court held that Plaintiffs had failed to meet their burden of pleading and "develop[ing] facts that might have shown a cognizable injury…" *Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 138 (4th Cir. 2011).

[2] Plaintiffs appealed the Court's decision, but the appeal was dismissed as moot on October 25, 2011, as the dates of Plaintiffs' event had passed.

Pursuant to the Picketing Ordinance, a "picket" is defined as:

A public display or demonstration of sentiment for or against a person or cause, including protesting which may include the distribution of leaflets or handbills, the display of signs and any oral communication or speech, which may involve an effort to persuade or influence, including all expressive and symbolic conduct, whether active or passive.

City Code § 19-301. Picketing is allowed by right, without the need for a permit, on "public sidewalks, … Independence Square Plaza, [or] any other city-controlled park…." City Code § 19-303(a).

Protests that are reasonably anticipated to obstruct the normal flow of traffic on a public street are classified as "demonstrations", and require a permit pursuant to the public assembly ordinance. Protests contained to public sidewalks and city-controlled park like traditional public forum are classified as "pickets", and may be conducted without the need for a permit in accordance with the picketing ordinance. Significantly, "festivals" on traditional public forum property – whether they involve a street closing or not – are regulated by the public assembly ordinance and always require a permit.

Plaintiff Operation Save America, Inc. ("OSA"), by and through Plaintiff Benham, applied for a public assembly permit pursuant to City Code § 19-312 on March 17, 2010. Plaintiffs' application identified their event as a "festival" and requested the City to close the 100 block of South Tryon Street between Trade and Fourth Streets, from 9:00 a.m. through 4:00 p.m. on Monday, July 19 through Friday, July 23, 2010. The application estimated attendance at 200. Plaintiffs' application further indicates that the event would have musical entertainment and that three bands would be playing, but that no stages would be required for these bands to play upon, and approximately three tents would be erected, each of which would be less than four hundred square feet in area.

3

Finally, Plaintiffs' application describes the event, in part, as "[a] festival to celebrate with music along with speakers discussing various topics. The activities will be relegated to disc plaza [*i.e.,* Independence Square Plaza, City owned traditional public forum space located in one of the quadrants formed by the intersection of Trade and Tryon Streets in downtown Charlotte] with the exception of food vendors in the closed street." Plaintiffs' application lists "i.e.[,] Kettle Korn and non-alcoholic drinks" in answering in the affirmative that the event will involve the sale of prepared food. Critically, Plaintiffs stated that the sale or distribution of Kettle Korn and non-alcoholic beverages would be the **only** activity to take place in the closed street.

On March 31, 2010, Defendant Cantrell, acting in her capacity as Defendant City's permit official, denied Plaintiffs' application and notified them of her decision via a mailed letter. In the Denial Letter, Defendant Cantrell explained that she denied Plaintiffs' permit application:

> based on my review of your application and my experience with your organization, Operation Save America. That experience has been witnessing demonstrative activities and expressive speech focused on the topics of abortion and homosexuality. Based on this, I have concluded that your proposed event is a demonstration and not a festival within the meaning of the Charlotte City Code.

Importantly, Defendant Cantrell added that Plaintiffs were free to "proceed with a demonstration [*i.e.,* "picket"] … **without a permit** on Independence Square Plaza." Defendant Cantrell also stated that, in the alternative, if Plaintiffs' planned event were properly classified as a "festival" under City Code § 19-311, she would still deny their application because:

> 1. The activities stated to take place in the street (the sale of Kettle Korn and non-alcoholic drinks) would not warrant the substantial

4

and unnecessary interference of closing Tryon Street for five
consecutive weekdays.

2. The economic and recreational benefit from an event projected
to attract 200 people, would not outweigh the negative impact of
the event on business and resident populations within or adjacent
to the proposed event site.

City Code § 19-312(c)(11) states that a public assembly permit application may be denied if "the proposed event would substantially or unnecessarily interfere with traffic." City Code § 19-312(c)(16) requires the permit official to take the following into account for festival applications such as Plaintiffs' application:

a. the cultural and/or educational significance of the event;
b. the extent to which the event contributes to the economic revitalization and business development of the City;
c. the impact and/or cost of the event to City support services;
d. the impact of the event to the public health, safety, and welfare;
e. the impact of the event on business and resident populations within or adjacent to the proposed event site;
f. the evaluation of any previous event produced by the event organizer with regard to planning, quality, public safety, and payment of invoices;
g. the frequency and timing of the event or similar events.

Defendant Cantrell stated that in her opinion, the impact of requested street closures simply to permit the sale of Kettle Korn and beverages – non-First Amendment activities which Plaintiffs admit in their festival application were the only events to have occurred on the street – is clearly not justified by the minimal cultural, education, economic revitalization, etc. benefits of a festival estimated to draw 200 people.

## II.    DISCUSSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c); *see also*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). While courts must view the facts and inferences in a light most favorable to the non-moving party, the non-moving party may not rest on mere allegations in the pleading. 477 U.S. at 248.

It appears that no party has conducted discovery in this case and there are no factual disputes. The Court will examine each of Plaintiff's claims to determine whether, as a matter of law, Defendants' application of the ordinances at issue violates one or more of Plaintiffs' constitutional rights.[3]

### A. First Amendment Claims (Counts I-II):

Plaintiffs allege that Defendants' denial of their festival permit abridges their First Amendment rights to freedom of speech and freedom of religion. The Court will address these two claims together as they are almost identical.

"[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). Rather, "the government may impose reasonable restrictions on the time, place, or manner of protected speech…" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Time, place, or manner restrictions on protected speech are reasonable when the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

---

[3] As stated earlier, Plaintiffs expressly frame this case as an "as applied" challenge, not a facial challenge as in *Benham I*. *See* Complaint, ¶ 28.

Plaintiffs complain that the application of Defendant City's ordinances to Plaintiffs' application by Defendant Cantrell was content-based because Cantrell stated in the denial letter that her decision was based upon her review of the application and "experience with [Plaintiffs'] organization, Operation Save America." Cantrell went on to state that her "experience has been witnessing demonstrative activities and expressive speech focused on the topics of abortion and homosexuality." The Supreme Court has held that an examination of the content of the communication is acceptable, "in order to determine whether a rule of law applies to a course of conduct," and is not content-based regulation. *Hill v. Colorado*, 530 U.S. 703, 704 (2000). Cantrell's denial letter does not condemn or express any viewpoint whatsoever on Plaintiffs' speech. It merely states that she is using her experience in determining which rule of law in the Charlotte City Code applied to Plaintiffs' application. Based upon this experience, she correctly concluded that Plaintiffs' event should be treated as a "demonstration" rather than a "festival" within the meaning of the City's public assembly ordinance, and that Plaintiffs did not need a permit.

Courts have "consistently recognized that a city has a 'legitimate interest in maintaining the safety, order, and accessibility of its streets and sidewalks.'" *Green v. City of Raleigh*, 523 F.3d 293, 301 (4th Cir. 2008) (internal citation omitted). Defendants' application of relevant provisions of the Charlotte City Code to Plaintiffs' festival permit application was narrowly-tailored to serve this significant governmental interest. As to the determination that Plaintiffs' putative "festival" was in actuality a "demonstration" not requiring a permit under the Charlotte City Code, normally a plaintiff claims that a permit regime is not narrowly tailored because it requires a permit for activities that the

7

plaintiff claims do not warrant permitting. *See*, *id*., at 303-05. Instead, Plaintiffs herein complain that rejection of their permit application—in favor of them being allowed to proceed with their demonstrative activities without a permit—was a constitutional deprivation.

Plaintiffs 'as applied' challenge requires that the Court merely look at whether Defendant Cantrell's denial of a festival permit—as it relates to declining to close a major city street for the sale of Kettle Korn and beverages—was a narrowly tailored application to satisfy the recognized legitimate interest of "maintaining the safety, order, and accessibility of its streets and sidewalks;" an interest which is articulated in Charlotte City Code §§ 19-312(c)(11) and (c)(16)(e). Once again, the Court notes that Plaintiffs were not told that they could not hold their event at all, but that they could not demand that the City close down a major street in the middle of uptown Charlotte during business hours for five consecutive business days simply so Plaintiffs could sell Kettle Korn and non-alcoholic beverages in the street for an estimated crowd of 200 people. In other words, only the non-expressive proposed activities were denied by Defendants. Accordingly, denial of Plaintiffs' permit did not even implicate any protected activity under the First Amendment. However, even if it did, the denial of Plaintiffs' festival permit was narrowly tailored to achieve the governmental interest of "maintaining the safety, order, and accessibility of its streets and sidewalks." *Green*, 523 F.3d at 301.

Regulation of speech in a public forum must "leave open ample alternative channels of communication." *Ward*, 491 U.S. at 802. Assuming events require a street closure, and subject to the permitting criteria of Charlotte City Code § 19-312(c), festivals and demonstrations of all shapes and sizes may be held in innumerable places in

the City of Charlotte. Festivals may also be permitted at one of the identified park properties controlled by Defendant City. Beyond that, protected speech activities such as demonstrations and pickets may be held on virtually any sidewalk or City-controlled park property by right subject only to the substantive restrictions of Article X of the Charlotte City Code. *See*, Charlotte City Code §§ 19-301 *et seq*.

Specific to this case, as established in the record, Defendants offered Plaintiffs several adequate alternatives for their event. Again, in her decision letter, Defendant Cantrell indicated that Plaintiffs could proceed with a demonstration without the need for a permit on Independence Square Plaza—the location where Plaintiffs' desired to hold their proposed event. And other adequate alternative avenues of communication existed for Plaintiffs' event, including the sidewalks along Tryon Street, the Government Center Plaza (approximate capacity of 500 individuals), the lawn of Old City Hall (approximate capacity of 2,500 individuals), or any other public sidewalks.

The Court therefore concludes that denial of Plaintiffs' festival permit did not abridge any First Amendment protected activity, and even if it had, the application of relevant Defendant City ordinances were reasonable time, place, and manner restrictions. Accordingly, summary judgment in favor of the Defendants as to Count I and II of Plaintiffs' Complaint is warranted.

**B. Equal Protection and Due Process Claims (Counts III-IV):**

The Court will next address Plaintiffs' Equal Protection and Due Process claims. Plaintiffs assert that their rights under the Fourteenth Amendment's Equal Protection and Due Process Clauses have been violated by Defendants' application of Defendant City's ordinances. As the Court noted in *Benham I*, "Plaintiffs' due process claims mirror their

9

equal protection claims and can be resolved together." *Benham I*, 682 F. Supp. 2d 549, 557 (W.D.N.C. 2010), *vacated on other grounds*, 635 F.3d 129 (4th Cir. 2011); *citing*, *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 266 (4th Cir. 2005).

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Willis*, 426 F.3d at 263. "Thus Plaintiffs can establish an equal protection claim by showing that they were 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Benham I*, 682 F. Supp. 2d at 557, *quoting*, *Willis*, 426 F.3d at 263. The Court tests whether Plaintiffs' events are similarly situated to others who were granted public assembly permits by investigating whether the events are "in all relevant respects alike." *Id.*, *quoting*, *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

Plaintiffs cite Defendant City's 2007 approvals of a Mec-Dec Celebration and a 90th Anniversary event for the American Red Cross as evidence that they were treated differently. The problem with Plaintiffs' argument is that these events were significantly different from Plaintiffs' proposed event. First of all, these two events closed a downtown street for only a relatively short period of time. As described by the Court in *Benham I*, the 2007 Mec-Dec Celebration was a "one-hour lunchtime event [involving] reenactments, a fife and a drum band, and the firing of a canon." *Benham I*, 682 F. Supp. 2d at 558. Similarly, the Red Cross event closed the streets between 11:00 a.m. to 3:00 p.m. on one workday. *Id*. The estimated attendance in those four hours of street closure

was 2,500 patrons.  Plaintiffs applied to close a downtown street for a full business week to sell Kettle Korn and soft drinks to its estimated 200.

It is clear from the record that Plaintiffs' putative festival was not at all similarly situated to other festivals that received a permit from Defendant City.  Closing a portion of an uptown street for Plaintiffs' sale of Kettle Korn and beverages would have unnecessarily mired traffic and had an inappropriate detrimental impact on business and resident populations. Accordingly, Plaintiffs cannot prove that they were afforded unequal protection under the law because they cannot offer any evidence of any similarly situated events that were treated differently from theirs in the festival permit application process. Plaintiffs equal protection and due process claims therefore fail.

**C. State Constitutional Claims (Counts V, VI and VII):**

Plaintiffs' claims under the North Carolina Constitution are identical analogs to their claims under the U.S. Constitution. Since North Carolina courts have essentially adopted U.S. Constitutional jurisprudence for purposes of resolving parallel claims under the State Constitution, the Court will not separately address these claims. *See*, *e.g.*, *State v. Petersilie*, 334 N.C. 169, 184, 432 S.E.2d 832, 841 (1993) (U.S. Constitution free speech jurisprudence adopted by state courts for parallel state claims); *In re Williams*, 269 N.C. 68, 78, 152 N.C. 317, 325 (1967) (religious liberty clauses afford same protection).  These claims likewise fail pursuant to the reasoning herein.

Based on the foregoing, the Court finds that there are no genuine issue of material fact and Defendants are entitled to entry of summary judgment as a matter of law.

Signed: March 27, 2013

Graham C. Mullen
United States District Judge